# EXHIBIT NO. 2

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BOHIO7, LLC | : | |
| | : | |
| Plaintiff, | : | Case No. 1:19-CV-03118 |
| | : | |
| vs. | : | |
| | : | |
| 1737 H STREET, LLC | : | |
| | : | |
| Defendant. | : | |

**AFFIDAVIT OF CHRIS CRITCHER**

I, **CHRISTOPHER CRITCHER**, being first duly sworn hereby affirm under penalties of perjury and upon personal knowledge as follows:

1.      I am over the age of eighteen (18) years and am otherwise competent to testify to the matters set forth below which information is based upon my personal knowledge unless otherwise indicated.

2.      I am employed as an Underwriter for Terra Nova Title & Settlement Services ("Nova").

3.      Nova was designated as the settlement agent to conduct the closing for the sale of the Land and Improvements owned by the Seller, 1737 H Street, LLC, at 1737 H Street, N.W., Washington, D.C. ("Property") to the Buyer, BOHIO7, LLC, under that Purchase and Sale Agreement, dated September 3, 2019 ("PSA").

4.      Nova provided a Commitment for Title Insurance, dated September 19, 2019 ("Commitment"), to the Buyer, which, in relevant part, set forth the conditions in Schedule B, Part I, that had to be satisfied ("Schedule B, Part I") in order for Nova, as a limited agent of First American Title Insurance Company, to issue a Policy of Title Insurance.

1

5.      A true and accurate copy of the Commitment is attached hereto as Exhibit "A".

6.      The closing was scheduled for September 30, 2019 ("Closing").  This Closing did not contemplate actual attendance by parties but was instead the date by which all documents and funds from the Buyer, Seller and Lender, Congressional Bank, were to be received.  Nova intended to then consummate the Closing.

7.      As of September 30, 2019, the Buyer had delivered to Nova to hold in escrow the the following document(s) from Schedule B, Part 1:

>   a.   Deed of Trust (Schedule B, Part 1 #4b);
>
>   b.   Assignment of Leases and Rents (Schedule B, Part 1 #4c);

8.      As of September 30, 2019, Congressional Bank had delivered to Nova in escrow its closing instructions.

9.      Nova was scheduled to conduct the Closing on September 30, 2019, upon satisfaction of the Terms, Commitments, Conditions and Schedules as stated in the Title Commitment.

10.     At the time set for Closing on September 30, 2019, the Seller provided Nova with the following document(s) from Schedule B, Part 1:

>   a.   Certificate of formation (Schedule B, Part 1 #13a);
>
>   b.   Operating agreement (Schedule B, Part 1 #13f);
>
>   c.   As to Aeolos Investments Limited: Register of Directors and Officers, List of Registered Members, Bye-Laws, Certificate of Incorporation and structure chart (Schedule B, Part 1 #13);

11.    Seller <u>did not</u> provide the items required by the following items prior to 5 p.m. Eastern on September 30, 2019:

    a.   Deed from Seller to Buyer (Schedule B, Part 1 #4a);

    b.   Payoff statement (Schedule B, Part 1 #8)

    c.   Owner's Affidavit (Schedule B, Part 1 #9 and #11);

    d.   Survey Affidavit (Schedule B, Part 1 #9)

    e.   Proof of filing of current Income-Expense form (Schedule B, Part 1 #12);

    f.   Items required under Schedule B, Part 1 #13 other than those listed in item 10 above;

12.    Nova did not consummate the Closing due to the fact that it did not receive the documents referred to in paragraph #11 above.

*I hereby affirm under penalties of perjury and upon personal knowledge, that the forgoing information is true and accurate.*

Dated: _____                           _____
                                             Christopher Critcher

3

# EXHIBIT "A"



| | ALTA Commitment for Title Insurance |
|---|---|
| *First American Title™* | ISSUED BY |
| | **First American Title Insurance Company** |
| **Commitment** | |

**COMMITMENT FOR TITLE INSURANCE**

**Issued By**

***FIRST AMERICAN TITLE INSURANCE COMPANY***

NOTICE

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, *First American Title Insurance Company*, a Nebraska Corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within six months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

***First American Title Insurance Company***

*[signature]*

Dennis J. Gilmore, President

*[signature]*

Jeffrey S. Robinson, Secretary

**If this jacket was created electronically, it constitutes an original document.**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



| Form 5030099 (1-31-17) | Page 1 of 3 | | ALTA Commitment for Title Insurance (8-1-16) |
|---|---|---|---|
| | | | Without Arbitration |

COMMITMENT CONDITIONS

1. **DEFINITIONS**
   (a) "Knowledge" or "Known": Actual or imputed knowledge, but not constructive notice imparted by the Public Records.
   (b) "Land": The land described in Schedule A and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   (c) "Mortgage": A mortgage, deed of trust, or other security instrument, including one evidenced by electronic means authorized by law.
   (d) "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   (e) "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   (f) "Proposed Policy Amount": Each dollar amount specified in Schedule A as the Proposed Policy Amount of each Policy to be issued pursuant to this Commitment.
   (g) "Public Records": Records established under state statutes at the Commitment Date for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.
   (h) "Title": The estate or interest described in Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   (a) the Notice;
   (b) the Commitment to Issue Policy;
   (c) the Commitment Conditions;
   (d) Schedule A;
   (e) Schedule B, Part I—Requirements;
   (f) Schedule B, Part II—Exceptions; and
   (g) a counter-signature by the Company or its issuing agent that may be in electronic form.

4. **COMPANY'S RIGHT TO AMEND**
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company shall not be liable for any other amendment to this Commitment.

5. **LIMITATIONS OF LIABILITY**
   (a) The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
       (i) comply with the Schedule B, Part I—Requirements;
       (ii) eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or
       (iii) acquire the Title or create the Mortgage covered by this Commitment.
   (b) The Company shall not be liable under Commitment Condition 5(a) if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   (c) The Company will only have liability under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
   (d) The Company's liability shall not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Conditions 5(a)(i) through 5(a)(iii) or the Proposed Policy Amount.
   (e) The Company shall not be liable for the content of the Transaction Identification Data, if any.
   (f) In no event shall the Company be obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



(g)  In any event, the Company's liability is limited by the terms and provisions of the Policy.

6.   LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT
   (a)  Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.
   (b)  Any claim must be based in contract and must be restricted solely to the terms and provisions of this Commitment.
   (c)  Until the Policy is issued, this Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.
   (d)  The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.
   (e)  Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.
   (f)  When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7.   IF THIS COMMITMENT HAS BEEN ISSUED BY AN ISSUING AGENT
   The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for the purpose of providing closing or settlement services.

8.   PRO-FORMA POLICY
   The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9.   ARBITRATION
   Arbitration provision intentionally removed.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



## ALTA COMMITMENT FOR TITLE INSURANCE
## FIRST AMERICAN TITLE INSURANCE COMPANY

> **Please read the exceptions and the terms shown or referred to herein carefully. The exceptions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered. It is important to note that this form is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

***Transaction Identification Data for reference only:***
Issuing Agent:  Terra Nova Title & Settlement Services
Issuing Office:  Washington, DC
Issuing Office's ALTA® Registry ID: 1063606
Loan ID No.:
Commitment No.: DC-19-2838
Property Address: 1737 H Street, NW, Washington, DC
Revision No.: 1

### SCHEDULE A

1.   COMMITMENT DATE: July 24, 2019 at 8:00 am

2.   Policy or Policies to be issued:

    (a)   2006 ALTA® OWNER'S POLICY (06/17/06)
        Proposed Insured:

        Bohio7 LLC, a Delaware limited liability company

        Proposed Policy Amount: $8,000,000.00

    (b)   2006 ALTA® LOAN POLICY (06/17/06)
        Proposed Insured:

        Congressional Bank, and each successor and/or assign that is a successor in ownership of the Indebtedness, except as provided in Section 12(c) of the Conditions

        Proposed Policy Amount: $7,013,489.00

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form

9/19/2019

## ALTA COMMITMENT FOR TITLE INSURANCE
## FIRST AMERICAN TITLE INSURANCE COMPANY

3.   The estate or interest in the Land described or referred to in this Commitment is Fee Simple

4.   Title to the Fee Simple estate or interest in the Land is at the Commitment Date vested in:

    1737 H Street, LLC, a Delaware limited liability company

5.   The Land is described as follows:

    The Land referred to herein below is situated in the District of Columbia, and is described as follows:

    Lot numbered Forty (40) in Square numbered One Hundred Twenty-seven (127) in a subdivision made by Floecker and McFee of parts of Lots Twelve (12), Thirteen (13), and Fourteen (14) and alley, as per plat recorded in Liber No. 30 at folio 101, among the Records of the Office of the Surveyor of the District of Columbia.

    AND BEING the same property conveyed unto 1737 H Street, LLC, a Delaware limited liability company, from Scotia Valley, N.V., a Delaware corporation, by that certain deed dated October 16, 2017 and recorded October 17, 2017 as Document No. 2017114903 among the Land Records of the District of Columbia.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form

9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

**SCHEDULE B, PART I**
**REQUIREMENTS**

Commitment No.: DC-19-2838

      All of the following Requirements must be met:

1.      Pay the agreed amount for the estate or interest to be insured.

2.      Pay the premiums, fees and charges for the Policy to the Company.

3.      Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

4.      Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered and recorded in the Public Records, to wit:

      (a)    Deed from 1737 H Street, LLC, a Delaware limited liability company, to Bohio7 LLC, a Delaware limited liability company, vesting fee simple title.

      (b)    Deed of Trust, Security Agreement and Fixture Filing from Bohio7 LLC, a Delaware limited liability company, to the Trustee(s) to be named, securing the Congressional Bank in the amount of $7,013,489.00.

      (c)    Assignment of Leases and Rents from Bohio7 LLC, a Delaware limited liability company, to Congressional Bank.

      (d)    UCC-1 from Bohio7 LLC, a Delaware limited liability company, to Congressional Bank.

5.      Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form

9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

6.     Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

In the event demolition/clearing and/or construction/renovations of improvements has commenced on the land prior to date of closing, the Company requires receipt of lien waivers for all work and/or material furnished to the land up to and including the date of closing, payment of any invoices due at the time of closing and/or an acceptable indemnity from the party(ies) authorizing such labor or material.

7.     The Company must be furnished copies of all instruments pertaining to this transaction for review prior to closing.

8.     Payment and release of record of the following items:

(a)     Deed of Trust from 1737 H Street, LLC, a Delaware limited liability company, to Daniel M. Lopez, Trustee, dated March 1, 2018 and recorded March 2, 2018 as Document No. 2018022299 securing Spectrum Organization LLC, a Delaware limited liability company, in the amount of $10,597,850.00.

(b)     Assignment of Leases and Rents from 1737 H Street, LLC, a Delaware limited liability company, to Spectrum Organization LLC, a Delaware limited liability company, dated March 1, 2018 and recorded March 2, 2018 as Document No. 2018022300.

(c)     UCC Financing Statement from 1737 H Street, LLC, a Delaware limited liability company, to Spectrum Organization LLC, a Delaware limited liability company, recorded March 2, 2018 as Document No. 2018022301.

9.     Should the Company be requested to delete or modify Exceptions 1, 2 and 4 listed in Schedule B, Part II of this Commitment, the attached Owner's Affidavit must be completed, executed and returned to the Company.   Additionally, should the Company be requested to delete or modify Exceptions 3 and 5 listed in Schedule B, Part II of this Commitment, the Company must be furnished a current survey prepared in accordance with the latest Minimum Standard Detail Requirements for ALTA/ NSPS Land Title Surveys.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form

9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

10. NOTICE: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

11. This Company must be furnished with satisfactory proof that caption property is owner occupied, occupied by the proposed purchaser, or vacant.  In the event of sale or lease of caption property, and if tenant occupied, further proof is required that the requirements of Title IV and V of D.C. Law 3-86, "Rental Housing Conversion and Sale Act of 1980" and as amended, have been complied with.

12. Evidence must be submitted of the timely filing of an "Income-Expense Form" which is both accurate and complete, as may be required by the Government of the District of Columbia, Department of Finance and Revenue.  NOTE:  Filings are due on or before April 1 of each year.

13. The Company must be furnished the following for review in regard to 1737 H Street, LLC, a Delaware limited liability company:

   (a) a current copy of the Articles of Organization on file with the state of origin and all amendments thereto;

   (b) a copy of its Certificate of Organization;

   (c) A current Certificate of Good Standing from the state of origin and the District of Columbia.

   (d) A Resolution authorizing the transaction contemplated by this commitment;

   (e) A certified list of the current members.

   (f) A complete copy of the existing operating agreement and all amendments thereto or a certification to the effect that there is none.

   (g) The Company must be provided with the following in regard to any limited partnership comprising the members of the limited liability company:

      (i) Copy of limited partnership agreement and any amendments thereto.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form
9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

    (ii)    Certificate of Limited Partnership and of Good Standing for the state of origin.

    (iii)    Copy of partnership resolution authorizing the transaction contemplated by this commitment.

(h) The Company must be furnished the following with regard to any corporate entities comprising the members of the limited liability company:

    (i)    Certified copy of the Articles of Incorporation and the Bylaws and all amendments thereto, if any. Certificate of good Standing from the state of origin.

    (ii)    Corporate Resolution authorizing the transaction contemplated in this commitment.

    (iii)    Certificate of Incumbency.

(i) The Company must be furnished the following for review in regard to limited liability company entities comprising the members of the limited liability company.

    (i)    A current copy of the Articles of Organization and all amendments thereto, a Certificate of Organization, and a current Certificate of Good Standing from the state of origin.

    (ii)    a Resolution authorizing the transaction contemplated by this commitment;

    (iii)    A certified list of the current members.

    (iv)    A complete copy of the existing operating agreement and all amendments thereto or a certification to the effect that there is none.

The above documentation will be required for each entity of such kind comprising any tier of ownership of said limited liability company.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form
9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

14.   The Company must be furnished the following for review in regard to Bohio7 LLC:

(a) a current copy of the Articles of Organization on file with the state of origin and all amendments thereto;

(b) a copy of its Certificate of Organization;

(c) A current Certificate of Good Standing from the state of origin and the District of Columbia.

(d) A Resolution authorizing the transaction contemplated by this commitment;

(e) A certified list of the current members.

(f) A complete copy of the existing operating agreement and all amendments thereto or a certification to the effect that there is none.

(g) The Company must be provided with the following in regard to any limited partnership comprising the members of the limited liability company:

   (i)   Copy of limited partnership agreement and any amendments thereto.

   (ii)  Certificate of Limited Partnership and of Good Standing for the state of origin.

   (iii) Copy of partnership resolution authorizing the transaction contemplated by this commitment.

(h) The Company must be furnished the following with regard to any corporate entities comprising the members of the limited liability company:

   (i)   Certified copy of the Articles of Incorporation and the Bylaws and all amendments thereto, if any. Certificate of good Standing from the state of origin.

   (ii)  Corporate Resolution authorizing the transaction contemplated in this commitment.

   (iii) Certificate of Incumbency.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form
9/19/2019

## ALTA COMMITMENT FOR TITLE INSURANCE
## FIRST AMERICAN TITLE INSURANCE COMPANY

   (i)  The Company must be furnished the following for review in regard to limited liability company entities comprising the members of the limited liability company.

      (i)  A current copy of the Articles of Organization and all amendments thereto, a Certificate of Organization, and a current Certificate of Good Standing from the state of origin.

      (ii)  a Resolution authorizing the transaction contemplated by this commitment;

      (iii) A certified list of the current members.

      (iv) A complete copy of the existing operating agreement and all amendments thereto or a certification to the effect that there is none.

The above documentation will be required for each entity of such kind comprising any tier of ownership of said limited liability company.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form

9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

15.     The endorsements listed below will be included as part of the proposed loan policy. As a prerequisite to issuance of said endorsements, the Company must be provided with the documentation shown in parentheses for its review and approval:

(a)     ALTA 3.1-06 Zoning (Borrower/Buyer to provide a zoning compliance letters/certifications by local administrators and/or surveyors, and/or a PZR Report, together with seller affidavit);

(b)     ALTA 6-06 Variable Rate (the provisions relating to the timing and measure of each possible change in the interest rate must be clearly specified in the deed of trust);

(c)     ALTA Form 8.2-06 Commercial Environmental (continuation of title and recordation of documents to be insured without intervention of filed environmental lien);

(d)     ALTA 9.3-06 (compliance with affidavit and survey requirements in Item 9 above);

(e)     ALTA 9.6-06 Private Rights (compliance with affidavit and survey requirements in Item 9 above);

(f)     ALTA 17-06 Access (compliance with survey requirement in Item 9 above and certification from surveyor that insured premises has actual vehicular and pedestrian access to and from an open and publicly maintained street or road);

(g)     ALTA 17.2-06 Utility Access (compliance with survey requirement in Item 9 above showing access points for all listed utilities located either in a public right of way adjacent to the property, or within an easement appurtenant to the property);

(h)     ALTA 22-06 Location (compliance with survey requirement in Item 9 above);

(i)     ALTA 24-06 Doing Business (no requirement);

(j)     ALTA 25-06 Same As Survey (compliance with survey requirement in Item 9 above);

(k)     ALTA 27-06 Usury (compliance with Item 7 above);

(l)     Arbitration (no requirement).

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form
9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

NOTE: This Commitment for Title Insurance does NOT constitute a report of title and is not to be relied upon by the proposed insured(s) or any other party as a title report or representation of the status of title. Any title search and examination conducted by or for the Company in connection with the issuance of this Commitment for Title Insurance, if any, is solely for the benefit of the Company. The sole liability of the Company and / or its issuing agent hereunder shall be as set forth in the Conditions of this Commitment for Title Insurance. The Company shall not be liable to the proposed insured(s) or any other party for any claim of alleged negligence, negligent misrepresentation, or any other cause of action in tort in connection with this Commitment for Title Insurance.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form
9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

**SCHEDULE B, PART II**
**EXCEPTIONS**

Commitment No.: DC-19-2838

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.    Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I – Requirements are met.

2.    Any facts, rights, interest, or claims, which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.

3.    Any encroachment, encumbrance, violation, variation, discrepancy, conflict in boundary lines, shortage in area, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.

4.    Any lien or right to a lien, for service, labor or material heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

5.    Roads, ways, streams or easements, if any, not shown of record, riparian rights and the title to any filled-in lands.

    NOTE:  Exceptions 1 thru 5 above will be eliminated upon compliance with Item No. 9 in Schedule B, Part I.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form

9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

6.    City taxes, general and special assessments, if any, subsequent to those imposed by the original levy for the second half of the fiscal year ending September 30, 2019 and Golden Triangle Business Improvements District Taxes subsequent to those levied for the period ending March 31, 2020, liens but not yet due and payable. The Policy does not insure against any possible future tax levies or against public charges, including, without limitation, taxes or assessments imposed by any office, department, agency or district or other governmental division of the District of Columbia subsequent to Date of Policy, nor does the Policy insure against possible public charges, as defined above, that have been levied or assessed but are not yet due and payable, nor does the Policy insure against any tax liens filed subsequent to Date of Policy.

7.    Water and Sewer Charges in connection with the land.

8.    Rights of parties in possession under unrecorded leases, if any, as shown on Exhibit "B" to be attached to the final policy.

9.    Rights of tenants under the Rental Housing Conversion and Sale Act of 1980, as amended, and regulations adopted thereunder.  Title IV and Title V of The Rental Housing Conversion and Sale Act of 1980, ("Sale Act") (D.C. Official Code 2011 ed., as amended, 42-3404.01 et. Seq.) (also known as the "tenant opportunity to purchase act" of "TOPA"). Rights of the DC Mayor or his assigns under The District of Columbia Opportunity to Purchase Amendment Act of 2008 (D.C. Official Code 2011 ed., as amended DC Official Code 2011 ed., as amended 42-3404.31 et. Seq)(DOPA).

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II–Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form

9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

10.   Any tax lien or special assessment under D.C. PACE (Property Assessed Clean Energy) or similar programs pursuant to Title 8, Chapter 17R – Energy Efficiency Financing (Sections 8-1778.01 et. Seq.) or levied pursuant to Title 47, Chapter 8, Subchapter IX (Sections 47-895.31 et seq.) of the District of Columbia Code, as may be amended.
NOTE: This exception will be omitted from the policy issued hereunder upon receipt of the executed Owner's Affidavit certifying that the owner has not entered into an Energy Efficiency Loan Agreement with the District of Columbia pursuant to Columbia pursuant to Chapter 17R – Energy Efficiency Financing (DC Code Sections 8-1778.01 through 8-1778.48).

11.   Any right, interest or claim that may exist, arise or be asserted against the Title under or pursuant to the Perishable Agricultural Commodities Act of 1930, as amended, 7 USC 499a et seq., the Packers and Stockyard Act of 1921, as amended, 7 USC 181 et seq., or any similar state laws.
NOTE: This exception will be omitted from the policy issued hereunder upon receipt of the Owner's Affidavit containing a certification that no portion of the Property is used in such a way is to be subject to the Perishable Agricultural Commodities Act of 1930, as amended, 7 USC 499a et seq., the Packers and Stockyard Act of 1921, as amended, 7 USC 181 et seq., or any similar state laws (restaurant, café, grocery, butcher shop or like uses).

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II–Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form

9/19/2019

**ALTA COMMITMENT FOR TITLE INSURANCE**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

12.  The following matters shown on the ALTA/NSPS Land Title Survey entitled "Lot 40 Square 127, 1737 H Street, N.W., Washington, D.C.", prepared by Bernard F. Locraft Civil Engineers, dated August 23, 1994 and last revised January 23, 2018:

   a.  Encroachment of roof cornice, eight inch (8") brick retaining wall, windows, window wells, water table, step and awning into H Street, N.W.;
   b.  Encroachment of five (5) story and basement brick and stone building up to one tenth of one foot (0.10') into 10' Public Alley;
   c.  Encroachment of cornices and windows into 10' Public Alley;
   d.  Possible rights of others in and to the use of the property between chain link fence and gate and true twenty and forty six hundredths feet (20.46') property line between Lot 40 and 10' Public Alley;
   e.  Encroachment of party wall into Lot 51;
   f.  Possible rights of other in and to party wall;
   g.  Encroachment of concrete curb, column and concrete roof over forty-nine and twenty six hundredths foot (49.26') boundary line into Lot 51;
   h.  Gas meter and pipes and drains without the benefit of a recorded easement.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I–Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form

9/19/2019

## ALTA COMMITMENT FOR TITLE INSURANCE
## FIRST AMERICAN TITLE INSURANCE COMPANY

FIRST AMERICAN TITLE INSURANCE COMPANY
By:  Terra Nova Title & Settlement Services, Agent
1211 Connecticut Avenue, NW, Suite 401
Washington, DC  20036
202-331-0901 Office/202-331-0905 Fax


_____
Authorized Signatory

This is the final page of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance, other than attachments.
This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B,
Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in
electronic form.

9/19/2019

**OWNER'S AFFIDAVIT**

The undersigned, being duly sworn according to law, deposes and says:

1.     I am _____ the _____ of 1737 H Street, LLC, a Delaware limited liability company, the owner (hereinafter the "Owner") of all that certain property ("Property") described in First American Title Insurance Company's Commitment for Title Insurance No. DC-19-2838.

2.     In my capacity as such, I am personally familiar with the management and operation of the Property, including the existence of any tenancies, leases, parties in possession and other occupancies, and payment of taxes and assessments in connection therewith.

3.     Owner's enjoyment of the Property has been peaceful and undisturbed and the title to the Property has never been disputed or questioned to my knowledge, nor do I know of any facts by reason of which title to, or possession of the Property might be disputed or questioned, or by reason of which any claim to the Property or any portion thereof might be asserted adversely to:

    (a)     **(Delete if not applicable)**  A complete list of all parties in possession of any portion of the Property is attached hereto as **Exhibit "A"** and made a part hereof. There are no other tenancies, leases, parties in possession or other occupancies of the Property and each of the parties disclosed on the attached list occupies the Property or has a right to such occupancy either as a tenant only without a lease or pursuant to the terms of an unrecorded lease which does not contain any right of first refusal or option to purchase.

    (b)     (**Delete if not applicable**) There are no tenancies, leases, occupancies or parties in possession of the Property.

4.     I know of no proceeding in bankruptcy that has ever been instituted by or against the owner (and if a partnership, against the general partner(s) thereof), nor has the owner ever made an assignment for the benefit of creditors.

5.     I know of no action or proceeding relating to the Property in any State or Federal Court in the United States, or any notice of *lis pendens* arising from any such action or proceeding, nor do I know of any State or Federal Judgment or any Federal Lien of any kind or nature whatever which now constitutes a lien or charge upon the Property.

6.     I know of no unrecorded documents affecting the Owner's interest in the Property.

7.     I have received no notice of any taxes, supplemental or special assessments or other liens affecting the Property, whether filed or unfiled, other than those shown

1

on the Commitment.

8.  I know of no unpaid charges for real estate, Business Improvement District, hotel occupancy, franchise, withholding or sales taxes, water and/or sewer services, vault (public space) taxes or unpaid special assessments for items such as improvements for sidewalks, curbs, gutters, sewers, etc., where any of the foregoing are applicable, not shown as existing liens in the public records.

9.  I know of no paid invoices for labor or services performed and/or material furnished or delivered during the last 123 days for alterations, repair, work, or new construction on the Property other than those paid invoices listed on **Exhibit "B"** attached hereto, and for which unconditional lien waivers have been provided.

10. I know of no unpaid invoices and/or claims for labor or services performed or materials furnished or delivered during the last 123 days for alterations, repair, work, or new construction on the Property, other than what is listed on **Exhibit "C"** attached hereto and which said invoices and/or claims will be paid at time of closing or from funds to be held in Escrow by Terra Nova Title & Settlement Services.

11. I know of no contract for the making of repairs or improvements on the Property giving rise to a mechanic's lien, **except: (If none, so state).**

12. I know of no present violations on the land of any enforceable covenants, conditions or restrictions.

13. The building or buildings located on the Property were completed more than _____ years ago.

14. The undersigned has not made any improvements to the premises that have been financed, in whole or in part, through DC PACE or similar programs pursuant to Chapter 17R – Energy Efficiency Financing (Sections 8-1778.01 through 8-1778.48 of the DC Code, except: **[if none, state "NONE"].**

15. No portion of the Property is used in such a way is to be subject to the Perishable Agricultural Commodities Act of 1930, as amended, 7 USC 499a et seq., the Packers and Stockyard Act of 1921, as amended, 7 USC 181 et seq., or any similar state laws (restaurant, café, grocery, butcher shop or like uses) except as follows: **(If none, state "NONE")**

2

16.   As an inducement to First American Title Insurance Company (the "Title Company") to insure over any matters attaching or created during the "gap" in time between the last continuation of title and the recording of the appropriate deed, mortgage, or other instrument with respect to the Property, the Undersigned shall promptly remove of record any matters filed of record during said gap period, and shall hold harmless and indemnify the Company for any loss, cost, expense, claim, or damage, including without limitation reasonable attorneys' fees, arising with respect to any such matters affecting any of the Property.

17.   This affidavit is given to induce the Title Company to issue its policy or policies of title insurance with full knowledge that it will be relying upon the accuracy of same.

[SIGNATURE PAGE TO FOLLOW]

1737 H Street, LLC,
a Delaware limited liability company


By: _____


State of_____
                                                    to-wit:
County of_____


Subscribed   and   sworn   to   before   me   this   _____   day   of
_____, 2019.


_____
Notary Public


My Commission Expires: _____

4

EXHIBIT "A"
Rent Roll

EXHIBIT "B"
Paid Invoices

EXHIBIT "C"
Unpaid Invoices

## SURVEY AFFIDAVIT

Property Address:    1737 H Street, NW, Washington, DC

Owner:                    1737 H Street, LLC, a Delaware limited liability company

File Number:           DC-19-2838

As inducement made by us for the title company to issue its Lender's/Owner's Title Insurance Policy for the benefit of the Lender/Purchaser free and clear of any exceptions to survey matters not shown on the attached survey, we hereby certify as follows:

1.      We are the owners of the above-referenced property as of the date of this Survey Affidavit.

2.      We have examined the attached ALTA/ACSM Land Title Survey titled "Plat of Survey Lot 40 Square 127 1737 H Street, N.W. Washington, D.C.", made by Bernard F. Locraft Civil Engineers, dated August 23, 1994, certified January 23, 2018 and last revised January 23, 2018, bearing Project/File No. _____.

3.      That there have been, as of this date, none of the following matters disclosed by said inspection which are not already shown on the aforesaid survey:

    (a)      No structural changes to any of the improvements shown on the survey;

    (b)      Not additional improvements which are not shown on the survey;

    (c)      No rights of way, including those for roads, lanes, driveways or walks across said premises serving other property;

    (d)      No telephone, telegraph or electric power poles or wires overhanging or crossing said premises and serving other property;

    (e)      No streams, ponds or lakes located, bordering or running through the property;

    (f)      No underground installations such as sewers, water pipes, gas or oil pipelines or conduits across the property.

    (g)      No drainage ditches or underground drain tiles across the property;

    (h)      No joint driveways or walkways, party walls, beam rights, porches, steps or roofs used in common or joint garages.

(i)     No encroachments or overhanging projections, including fences, whether onto the property from adjoining properties or onto adjoining properties from said land.

(j)     No evidence of any boundary line disputes.

**Except as follows (If None, state NONE):**

_____

_____

_____

4.     This Survey Affidavit is given to induce Terra Nova Title & Settlement Services as agent for First American Title Insurance Company to issue its policy or policies of title insurance.

5.     Owner fully understands the legal aspects of any misrepresentation and/or untrue statements made herein and agrees to indemnify, defend, protect and hold harmless First American Title Insurance Company against liability occasioned by reason of reliance upon the statements made herein.

1737 H Street, LLC,
a Delaware limited liability company

_____

By:

Title:

District of Columbia

to wit:

Subscribed and sworn to before me this _____ day of _____, 2019.

_____

Notary Public

My Commission Expires:_____